[No. 65622-8-I.   Division One.   December 19, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. CORDARREL ROBERT-LOUIS HAYES, *Appellant*.

508

*Maureen M. Cyr* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Andrea R. Vitalich, Deputy*, for respondent.

¶1 SPEARMAN, J. — A jury convicted Cordarrel Hayes of second degree assault for injuring his girl friend, Shanay Shaw, in an altercation outside of a night club. Hayes argues the trial court violated his state and federal constitutional rights to confront witnesses when it admitted Shaw's hearsay statements to medical personnel; that the court violated his right to present a defense by declining to admit letters Shaw wrote to him while he was in jail; and that his offender score was erroneous because the State failed to prove a 2005 Ohio conviction was comparable to a Washington crime.

¶2 Because Hayes consciously waived his right to confrontation and any error in declining to admit the letters was harmless, we affirm the conviction. Under *State v. Hunley*, 161 Wn. App. 919, 253 P.3d 448, *review granted*, 172 Wn.2d 1014, 262 P.3d 63 (2011), however, the State cannot meet its burden of proving comparability simply by relying on the failure of a defendant to object. Accordingly, we affirm the conviction but remand for resentencing.

## FACTS

¶3 On February 21, 2010, Cordarrel Hayes went to a Seattle dance club with his girl friend, Shanay Shaw, and several other friends. Later that night, Hayes and Shaw left the club and stood behind Hayes's car talking. At some point during or immediately after that conversation Shaw sustained injuries to her neck and face. How those injuries occurred was disputed.

¶4 According to Hayes, while he was talking with Shaw, someone pushed him from behind. He testified that the

person who pushed him was a tall man who he did not know. The man accused Hayes of having sex with his girl friend, and this accusation caused Shaw to become angry with Hayes. Then the man started punching Hayes and a fight ensued. Hayes testified that both he and the other man inadvertently struck Shaw while she was trying to break up the fight. Hayes testified that aside from the altercation, he did not hit or choke Shaw that night.

¶5 After being injured, Shaw ran back towards the club. She approached John Schweiger, a Seattle police officer, who was sitting in his patrol car nearby. Shaw asked Schweiger for help. She had a bloody lip and seemed scared and shaken up. Shaw told Schweiger that "she'd been beat up, and that her boyfriend had done it." She stated that Cordarrel Hayes was her boyfriend and that she had been "punched, knocked down, and then kicked in the head." She then saw Hayes walking through a nearby parking lot and identified him to Officer Schweiger.

¶6 Officer Schweiger called Thomas Burke, a Seattle fire fighter, to the scene to provide medical aid to Shaw. Burke noted that Shaw was crying, physically shaken, and in pain. She was also under the influence of alcohol. Shaw told Burke that her boyfriend had beaten her up. She stated that she had been punched in the face and neck. Her lip was swollen and cut and she reported pain in her neck. She was taken to Harborview Medical Center.

¶7 At the hospital, Shaw told medical personnel that her boyfriend choked her and punched her in the face. Doctors determined that she had a broken nose, although they could not tell when that injury occurred. Shaw also had a cut on her lip, swelling on her face, and a sore neck. She told hospital staff that she had been assaulted by her boyfriend four times in the past.

¶8 Shaw then met with Alice Walters, a social worker at the hospital. Walters noted that Shaw seemed fearful and looked like she had been hit. Shaw told Walters that she had been outside a bar with Hayes and then he grabbed her

and threw her to the ground. She also told Walters that Hayes had hit her previously; but he had never hit her that bad before. Shaw told Walters that she did not feel safe going back to the home she shared with Hayes. Walters found her a domestic violence shelter.

¶9 The police arrested Hayes later that day. Hayes told the officer taking him to the police station that he was fighting another man and his girl friend tried to intervene. He told the officer that she hit her head against a wall and broke her nose while trying to break up the fight.

¶10 After Hayes was booked into jail, he called his friend Nicole O'Donnell, and told her to call Shaw. Hayes instructed O'Donnell to keep Shaw away from the court and the detective. O'Donnell tried to call Shaw at least 16 times after her conversation with Hayes, although she never actually spoke to her.

¶11 O'Donnell, who was present at the Diamond Club at the time of the incident, testified that she saw Hayes and another man fighting but did not see Shaw get hit. O'Donnell also testified that two days after the incident Shaw told her that she made up the story about the assault because she was angry with Hayes for cheating on her. The parties stipulated that during Hayes's arraignment, Shaw told the victim advocate that she got in the way while Hayes was fighting another man.

¶12 Shaw sent several letters to Hayes while he was in jail. In the letters, Shaw told Hayes that she was frustrated that he had been seeing a different girl. She wrote that she still loved Hayes. She also wrote, "I want you out because I want you. I need you to be a dad." The letters contained sexually explicit language and one letter included a picture of Shaw wearing only underwear. She wrote that she had received a subpoena in the mail but that she was not going to testify.

¶13 The State charged Hayes with second degree assault, domestic violence.[1] Before trial, the State declared that Shaw was not available to testify, although she had been subpoenaed by the State. The State never sought a material witness warrant for Shaw. Ellecia Johnson, Shaw's mother, testified at trial that Shaw was at home and that the prosecutor never asked where she was. Johnson also testified that Shaw did not testify because she was afraid of Hayes.

¶14 The State moved to admit evidence that Hayes had previously committed acts of domestic violence against Shaw. Specifically, the State wanted Shaw's mother to testify that she had seen Hayes strike Shaw on two occasions. Defense counsel objected, arguing that the evidence was not relevant. The court held that the evidence was admissible to explain that Shaw would not testify because she was afraid of Hayes.

¶15 Hayes moved to admit the two letters that Shaw wrote to Hayes while he was in jail under at least two theories: that they showed Shaw was not actually afraid of Hayes, and that they were relevant to his theory that Shaw fabricated the assault because she was angry at him for his alleged cheating. The court ruled that the letters were not admissible because they were not relevant.

¶16 Shaw's hearsay statements to Officer Schweiger, the fire fighter, doctors at Harborview, and the social worker were all admitted at trial. Shaw's hearsay statements to medical personnel were admitted under the medical diagnosis or treatment hearsay exception without objection. Shaw's hearsay statements to Officer Schweiger were admitted, over Hayes's objection, under the excited utterance exception, but are not at issue on appeal.

---

[1] The State also charged Hayes with one count of second degree assault by strangulation, one count of witness tampering, and two counts of misdemeanor violation of a no-contact order. The jury was unable to agree on a verdict for the assault by strangulation charge, and the court granted a mistrial on that count. The jury found Hayes guilty of witness tampering, and he pleaded guilty to the no-contact order violations. Those convictions are not at issue on appeal.

¶17 The jury found Hayes guilty of assault in the second degree by reckless infliction of bodily harm. The trial court calculated Hayes offender score as 5 and imposed a standard range sentence. The score included a 2005 conviction in Ohio for "trafficking in marijuana." Hayes did not object to his criminal history as set forth in the State's presentence report.

## DISCUSSION

### A. Confrontation Clause

¶18 Hayes argues the admission of Shaw's hearsay statements to medical providers violated his federal and state constitutional rights to confront the witnesses against him. The State responds that this issue may not be reviewed on appeal because Hayes waived it by failing to object at trial. We agree with the State.

¶19 We generally will not consider issues raised for the first time on appeal. RAP 2.5(a); *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). An exception exists, however, for manifest errors affecting a defendant's constitutional rights. RAP 2.5(a)(3); *State v. Walsh*, 143 Wn.2d 1, 7, 17 P.3d 591 (2001). We use a two-step analysis to determine whether to examine alleged constitutional errors for the first time on appeal. *State v. Kronich*, 160 Wn.2d 893, 899, 161 P.3d 982 (2007).

¶20 First, we must determine whether the alleged error involves a constitutional issue. *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992). The right to confront opposing witnesses is guaranteed by the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. Thus, we conclude that Hayes has presented a constitutional issue.

¶21 Second, we must determine whether the error was manifest. *Id.* An error is manifest if it has "practical and identifiable consequences in the trial of the case." *State v. Stein*, 144 Wn.2d 236, 240, 27 P.3d 184 (2001). Put another

way, a "manifest error" is an error that is " 'unmistakable, evident or indisputable.' " *State v. Burke*, 163 Wn.2d 204, 224, 181 P.3d 1 (2008) (quoting *Lynn*, 67 Wn. App. at 345). Purely formalistic errors are not manifest. *Kronich*, 160 Wn.2d at 899. Here, the alleged error had practical and identifiable consequences affecting the outcome of the trial. The State's case relied heavily on Shaw's hearsay statements to medical personnel because Shaw did not testify at trial and Hayes was the only other witness to the material events. Additionally, Shaw's hearsay statements were highly prejudicial to Hayes. They directly contradicted Hayes's version of events and he had no opportunity to cross-examine Shaw. The lack of cross-examination was particularly damaging to Hayes because Shaw had recanted most of her story by the date of the trial. Because Shaw's hearsay statements were so crucial to the State's case and were so prejudicial to Shaw's defense, we conclude that the alleged error was manifest.

¶22 The State nevertheless contends that Hayes waived his confrontation claims by consciously failing to litigate the issue below. Even where a constitutional error is manifest, it can still be waived if the issue is deliberately not litigated during trial:

> Although a confrontation clause issue is clearly of constitutional magnitude, RAP 2.5(a)(3) requires a *manifest error* of constitutional magnitude, not simply the "[identification of] a constitutional issue not litigated below", *State v. Scott*, 110 Wn.2d 682, 687, 757 P.2d 492 (1988), and particularly not simply the identification of a constitutional issue *deliberately* not litigated below. *Cf.* [*State v.*] *Valladares*, 99 Wn.2d [663,] 672[, 664 P.2d 508 (1983)]; *see also State v. Lynn*, 67 Wn. App. 339, 343-44, 835 P.2d 251 (1992) (recognizing that sophisticated defense counsel may deliberately avoid raising constitutional issues of little or no significance to the jury verdict but which might be a basis for a successful appeal).

*State v. Walton*, 76 Wn. App. 364, 370, 884 P.2d 1348 (1994).

¶23 In *Walton*, the defendant mentioned during a deposition that he may object to the prosecutor's use of the

deposition at trial because the deponent was actually available to testify in person. *Id.* at 369. The defendant, however, never objected to the prosecutor's use of the deposition. *Id.* The defendant claimed on appeal that the State failed to use every reasonable means to secure the deposed witnesses presence at trial. The court refused to review the issue, noting that the defendant was trying "to obtain review of a constitutional issue the existence of which he clearly recognized at the time of trial, but which he consciously decided not to raise at trial." *Id.* at 370. As such, the court held that "[a] conscious decision not to raise a constitutional issue at trial effectively serves as an affirmative waiver." *Id.* at 370.

¶24 The court in *Walton* relied on *Valladares*, 99 Wn.2d at 671-72. In *Valladares* the defendant moved pretrial to exclude evidence obtained during a warrantless search, then "affirmatively withdrew the motion." *Walton*, 76 Wn. App. at 368 (citing *Valladares*, 99 Wn.2d at 671-72). The defendant was convicted and appealed, assigning error to the "refusal" of the trial court to exclude the evidence. *Valladares*, 99 Wn.2d at 667. Our Supreme Court refused to review the issue, holding that the constitutional issue had been "waived or abandoned." *Id.* at 672.

¶25 The *Valladares* court, in turn, relied upon a United States Supreme Court case, *Johnson v. United States*, 318 U.S. 189, 63 S. Ct. 549, 87 L. Ed 704 (1943). There, the Court found constitutional error but held reversal was not required because the defendant "affirmatively withdrew a Fifth Amendment objection to a prosecution." *Valladares*, 99 Wn.2d at 672 (quoting *Johnson*, 318 U.S. at 200). Justice Douglas wrote that withdrawal of the objection amounted to an express waiver:

> We can only conclude that petitioner expressly waived any objection to the prosecutor's comment by withdrawing his exception to it and by acquiescing in the treatment of the matter by the court. It is true that we may of our own motion notice errors to which no exception has been taken if they

would "seriously affect the fairness, integrity or public reputation of judicial proceedings." But we are not dealing here with inadvertence or oversight. This is a case where silent approval of the course followed by the court is accompanied by an express waiver of a prior objection to the method by which the claim of privilege was treated.

*Johnson*, 318 U.S. at 200 (citations omitted) (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S. Ct. 391, 80 L. Ed. 555 (1936)).

¶26 The State argues there are "obvious tactical reasons" that explain why Hayes's counsel did not object to the admission of Shaw's hearsay statements. The State attempts to characterize Hayes's failure to object to the hearsay statements as a legitimate trial tactic or strategy. The State is confusing the ineffective assistance of counsel doctrine with the case law holding that a manifest constitutional error may be waived where it is deliberately not litigated below. The important question here is not whether counsel's decisions can be characterized as legitimate trial tactics; rather, the important question is whether Hayes clearly recognized the constitutional issue and deliberately failed to object to the evidence at trial. *Johnson*, 318 U.S. at 199-200; *Valladares*, 99 Wn.2d at 672; *Walton*, 76 Wn. App. at 370. We conclude he did.

¶27 Several facts indicate that Hayes consciously waived his right to confrontation. First, counsel for Hayes objected to the admission of Shaw's hearsay statements to Officer Schweiger on confrontation grounds:

> The issue of excited utterance, Judge Hayden ruled it was qualified as excited utterance.[2] The real issue is Sixth Amendment *Crawford*.[3] And is this testimonial, ongoing testimonial? Ongoing emergency? I don't think there was one because

---

[2] Although this pretrial motion and the trial itself were in front of Judge Michael Heavey, other motions were heard by Judge Michael Hayden.

[3] *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). In *Crawford*, the United States Supreme Court held that admission of testimonial hearsay statements of a witness who does not appear at a criminal

Officer Schweiger was there. She was in the presence of Officer Schweiger. So in terms of any further danger for [sic] Mr. Hayes, there wasn't any. Her statements – in fact, at one point she said, there he is, referring to Mr. Hayes.

One could say that this is testimony. The statements might not be. I think a better analysis is to say she went to the officer to try to get this gentleman apprehended. So her entire statements, all of the statements to Officer Schweiger would be covered by *Crawford*.

Likewise, counsel for Hayes argued that to the extent the State was seeking to show Shaw would not testify because of her fear, Hayes had a confrontation right to impeach Shaw with her letters to Hayes as if she were there:

Judge Heavey: So the defense is offering this for what purpose?

Mr. Ward: That goes to show that she's not afraid of him at all. I wanted Judge Hayden to review that on his finding on [ER] 404(b), and he declined to do that. I said certainly this should be available for the jury to see the other side, that she's not fearful. The letter says she wants to have a second child by him.

. . . .

Can the [S]tate then turn around and use Ms. Shaw's statement to the defendant? That is clearly testimonial, which is why the [S]tate's not trying to put it in its case in chief. If they offer it under [ER] 806, they still run into a *Crawford* dilemma.

It's testimonial. They can rehabilitate her, but it's still got to be subject to rules of evidence and constitutional protections. I don't know how they get around *Crawford*, because this is a statement to a detective. It was for the purpose of criminal investigation.

These pretrial objections to other statements on confrontation grounds make it clear that defense counsel was well aware of Hayes's right to confrontation.

¶28 Furthermore, counsel and the trial court actually conferred before trial on the issue of whether Shaw's

trial violates the confrontation clause of the Sixth Amendment unless (1) the witness is unavailable to testify and (2) the defendant had a prior opportunity for cross-examination. The Court left "for another day any effort to spell out a comprehensive definition of 'testimonial.' " 541 U.S. at 68.

hearsay statements to medical providers violated Hayes's confrontation rights:

> Mr. Herschkowitz: What we can do, Your Honor, since your Honor would like some briefing with regards to the *Crawford* issue, while Mr. Ward prepares a guilty plea the State can go down and do some preliminary research on that.
>
> . . . .
>
> Judge Hayden: I think the research will be reasonably straightforward. I think it will be probably easy to find the one on statements made for medical diagnosis and my guess is what you're going to find is that *Bruton*[4] is not implicated.
>
> . . . .
>
> Judge Hayden: . . . However the statements made for medical diagnosis may be different. And then, the question kind of gets into -- I think it goes back to the old case law which was the well-rooted hearsay exception, wasn't it? Anyway. Used to be if it was well-rooted it could come in, if it was not well-rooted it didn't come in. And the *Crawford* --
>
> Mr. Ward: I thought *Crawford* did away with the well-rooted --
>
> Judge Hayden: It did.
>
> Mr. Ward: -- and puts in this testimonial --
>
> Judge Hayden: It does. It does. But query: If it's non-testimonial and it's also not well-rooted, is well-rooted still in play? Does it have to be a well-rooted recognized exception plus non-testimonial? I don't know. A little twist.
>
> And so, you know, what if they say, well, statements made to medical providers are not testimonial; does that end the question or does it say are they also worthy enough that they can come in because it's such a recognized exception? My guess, and it's only a guess, is that kind of stuff can still come in.
>
> You go take a look at that.

¶29 Thus, even though counsel for Hayes discussed the issue with the trial court, and even though he moved to exclude Shaw's statements to the police, he never moved to

---

4 *Bruton v. United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476 (1968).

exclude Shaw's hearsay statements to medical providers, nor did he object to their admission when offered by the State. Moreover, Hayes gained tactical advantages from permitting the hearsay statements to medical providers. For example, counsel elicited from the fire fighter that Shaw admitted consuming alcohol and that contrary to her later statements when she arrived at Harborview, she had originally denied losing consciousness. Counsel also elicited testimony that Shaw did not mention being strangled until after she arrived at Harborview. Counsel then used these inconsistencies to attack Shaw's credibility during closing argument. Under these circumstances, the record supports a conclusion that Hayes knew about the issue but made a deliberate decision not to litigate it with the trial court. *Walton*, 76 Wn. App. at 370. Accordingly, we conclude that Hayes waived his confrontation clause claims and we decline to review them.

## B. Right To Present a Defense

¶30 Hayes next claims the trial court violated his Sixth Amendment right to present a defense when it refused to admit into evidence two letters Shaw sent to Hayes while he was in jail. Specifically, he claims the letters should have been admitted to rebut the State's theory that Shaw was absent from the trial because she feared Hayes, and to support his theory that she fabricated the allegations in retaliation for Hayes's relationships with other women.

¶31 The Sixth Amendment guarantees criminal defendants the right to present a defense. *State v. Jones*, 168 Wn.2d 713, 719-20, 230 P.3d 576 (2010). A defendant's right to present a defense includes the right to offer testimony. *Id.* Evidentiary decisions are within the sound discretion of the trial court. A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *State v. Enstone*, 137 Wn.2d 675, 679-80, 974 P.2d 828 (1999). Hayes was entitled to present evidence attacking Shaw's credibility under ER 806. If a

hearsay statement has been admitted in evidence, "the credibility of the declarant may be attacked . . . by any evidence which would be admissible for those purposes if declarant had testified as a witness." ER 806. In this case, the court admitted Shaw's hearsay statements to medical doctors, a fire fighter, and a social worker.

¶32 The State argues the letters, as a whole, were not admissible because they were not relevant to Shaw's credibility. Specifically, the State claims that the letters are filled with "irrelevant and inflammatory personal information." Irrelevant evidence is inadmissible under ER 402. Evidence that is more unfairly prejudicial than probative is inadmissible under ER 403. The State's concern about the letters is warranted; the letters were filled with descriptions of drinking, dancing, socializing with other men, toilet training for her child, and many passages consisting of sexually explicit remarks. Moreover, one of the letters contained a photograph of Shaw posed in only underwear on a bed.

¶33 At trial, the parties discussed this issue, and the State agreed the letters, or portions thereof, could be admitted in some kind of redacted form. But the parties and the court moved on to other issues before reaching any agreement or resolution regarding admission of a redacted form of the letters or admission of some of the contents of the letter. On appeal, the State concedes that at least some portions of the letters were admissible under ER 806, such as the portion where Shaw stated she still wanted to be in a relationship with Hayes.

¶34 But even if portions of the letters were improperly excluded, Hayes was not denied his right to present a defense because he was allowed to introduce other evidence impeaching Shaw's credibility and rebutting the implication that she did not testify due to fear. Hayes's friend O'Donnell testified that Shaw told her that she lied to police about the incident to get back at Hayes's for cheating on her. A stipulation was read to the jury that Shaw told the

victim's advocate at Hayes's arraignment that she lied about the incident and had been injured while trying to break up a fight between Hayes and another man. Hayes was allowed to identify one letter in court, showing the jury that Shaw was writing to him in jail near the time of the trial. Hayes testified that Shaw visited him in jail after his arrest. Thus, Hayes's arguments here—that he was not allowed to impeach Shaw's credibility during the trial or challenge the implication that Shaw declined to testify out of fear—are not supported by the record, and any error in excluding the letters was harmless.

### C. Sentencing

¶35 Hayes also argues that the trial court erred in including a 2005 Ohio conviction for trafficking in marijuana in his offender score because the State did not prove that the offense was comparable to a felony in Washington. When prior convictions are from another state, the Sentencing Reform Act of 1981, chapter 9.94A RCW, requires the trial court to determine the most comparable crime in Washington. To determine whether an out-of-state conviction may be included in a defendant's offender score, the trial court must compare the legal elements of the crime with the comparable Washington felony offense. *State v. Morley*, 134 Wn.2d 588, 605-06, 952 P.2d 167 (1998).

¶36 If the elements of an out-of-state crime are broader than its Washington equivalent, the elements are not legally comparable. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007). If the elements are comparable, then the out-of-state conviction is included in the offender score. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005). If the elements are not comparable, then the sentencing court must examine the defendant's conduct based on the undisputed facts in the record to determine whether the defendant's conduct violates a comparable Washington statute. *Morley*, 134 Wn.2d at 606. The State has the burden of proving any out-of-state convictions are

comparable. *State v. Ford*, 137 Wn.2d 472, 480, 973 P.2d 452 (1999).

¶37 Hayes argues that the State failed to provide any evidence that his Ohio conviction was legally or factually comparable to the Washington felony. The State responds that Hayes waived his right to challenge his offender score when he failed to object to his criminal history at sentencing. According to the State, Hayes's silence at the sentencing hearing amounts to the same thing as affirmative acknowledgement of the prior conviction under the 2008 amendments to RCW 9.94A.530, which now reads:

> In determining any sentence . . . the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing . . . . *Acknowledgement includes not objecting to information stated in the presentence reports and not objecting to criminal history presented at the time of sentencing.*

RCW 9.94A.530(2) (emphasis added).

¶38 Division Two recently held, however, that this language unconstitutionally relieved the State of its burden to prove an out-of-state conviction is comparable to a Washington conviction. *See Hunley*, 161 Wn. App. 919. In that case, Division Two pointed out that our Supreme Court has held that "the State meets its constitutional burden to prove prior convictions at sentencing when it proves such convictions by a preponderance of the evidence." *Hunley*, 161 Wn. App. at 927 (citing *Ford*, 137 Wn.2d at 479-80). "In *Ford*, the court held that the State's 'bare assertions, unsupported by evidence' are insufficient to prove a defendant's prior convictions." *Id.* (quoting *Ford*, 137 Wn.2d at 482). Indeed, "under the basic principles of due process, the facts relied on in sentencing must have some basis in the record." *Id.* (citing *Ford*, 137 Wn.2d at 482). On this basis, Division Two held that "[t]he defendant's silence is not constitutionally sufficient" to meet the State's burden of proof at sentencing. *Id.* at 928.

¶39  Here, the State presented no proof that Hayes's Ohio conviction was legally or factually comparable to the Washington felony, and the State relies only upon Hayes's silence at sentencing. Under *Hunley*, this is insufficient, and we remand for resentencing. On remand, the State will have the opportunity to present evidence that Hayes's Ohio conviction is comparable to a Washington felony.

¶40 We affirm Hayes's conviction but remand for resentencing.

BECKER and APPELWICK, JJ., concur.

Review denied at 176 Wn.2d 1020 (2013).