# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 52063-0-II |
| Respondent, | |
| v. | |
| FERNANDO ANDRES CELAYA, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Fernando A. Celaya appeals his two fourth degree assault convictions and his convictions of felony harassment, witness tampering, and violation of a no-contact order. Celaya argues that his convictions should be dismissed because the State committed governmental misconduct that caused a violation of Celaya's constitutional right to a speedy trial. In his statement of additional grounds (SAG), Celaya argues that he received ineffective assistance of counsel and his convictions should be reversed under the cumulative error doctrine.

We decline to review Celaya's claim of governmental misconduct because Celaya did not move to dismiss his case under CrR 8.3(b) in the trial court and thereby waived this claim on appeal. We also decline, under RAP 2.5(a)(3), to review Celaya's claim that his constitutional right to a speedy trial was violated because Celaya fails to show that the alleged violation is a

manifest constitutional error. Finally, we hold that the issues raised in Celaya's SAG do not warrant reversal. Accordingly, we affirm.

FACTS

Celaya and Kaleena Jeffries were in a romantic relationship for about two years. Celaya and Jeffries lived with Celaya's friend, Brien Pace. On June 19, 2017, Celaya and Jeffries got into an argument when Celaya accused Jeffries of cheating on him. The argument lasted on and off for two days. During this time, their argument became physical. Celaya bit Jeffries, pulled her by her hair, threw her to the ground, and threatened to kill her if she left him. When Celaya put his hand on Jeffries's mouth and nose so she couldn't breathe, Jeffries bit and scratched Celaya. Eventually, Jeffries called the police from the bathroom. The police arrived and arrested Celaya.

On June 21, 2017, the State charged Celaya with second degree assault[1] and felony harassment.[2] The State alleged that the crimes were domestic violence offenses as defined in former RCW 10.99.020 (2004). On the same day, the trial court entered a domestic violence no-contact order that prohibited Celaya from direct or third party contact with Jeffries.

Celaya called Pace on June 22, 2017 from jail. On two occasions during the call, Celaya asked Pace to convince Jeffries to drop the charges against him. Celaya then told Pace that if Jeffries was not willing to drop the charges, Pace should kick her out of his house. Shortly after the court entered the no-contact order, Celaya also called Jeffries's cell phone 197 times. Jeffries did not answer any of these calls.

---

[1] RCW 9A.36.021.

[2] RCW 9A.46.020(1)(a)(i), (2)(b).

On July 18, the parties agreed to continue the trial from August 8 to October 2, 2017. The parties also agreed to a continuance on September 19 in order for the defense to obtain records from the State and schedule interviews. The court continued the trial to November 14.

Celaya moved for a continuance on November 13 because he "was only recently able to interview [the] alleged victim and still in the process of obtaining discovery." Clerk's Papers (CP) at 24. The court granted the continuance and set the trial for December 12. The State moved for a continuance on December 1 because two law enforcement officers were unavailable during the trial dates. The court continued the trial to January 17, 2018.

The trial court held a trial readiness hearing on January 5. At the hearing, the court entered a trial readiness status hearing order, which stated that an amended information would be filed on the morning of trial to add one count of fourth degree assault. Also at the hearing, the State moved for a continuance because two witnesses were unavailable on the dates scheduled for trial. Celaya objected to the continuance. The court granted the State's motion and continued the trial date to January 24. The expiration of the time for trial period was February 23, 2018.

The State again moved for a continuance on January 24 because the prosecutor assigned to Celaya's case was "assigned out on another trial." *Id.* at 35. Celaya objected to the continuance. The court granted the State's motion and continued the trial to February 8.

On February 8, the State moved to amend the information to add a count of fourth degree assault,[3] a count of violation of a no-contact order,[4] and a count of witness tampering.[5] The State alleged that the crimes were domestic violence offenses as defined in former RCW 10.99.020.

Celaya objected to the addition of the violation of a no-contact order and witness tampering charges.[6] Defense counsel asserted that he could not effectively prepare a defense for these charges because he did not receive notice of the State's intent to charge Celaya with the violation of a no-contact order and witness tampering until February 4. The State had sent an e-mail informing defense counsel with the charges on January 30, but defense counsel was out of the office the week before due to an illness and child care issues.

Defense counsel stated that the "allegations substantially change . . . and will bring great difficulty in the defense that we had anticipated putting forth." Verbatim Report of Proceedings (VRP) (Feb. 8, 2018) at 8. He also expressed concern that proceeding with trial that day on the amended information would be unfair and prejudicial to Celaya and requested that the trial court proceed with trial on the charges set forth in the first information.

---

[3] Former RCW 9A.36.041(1), (2) (1987).

[4] Former RCW 26.50.110(1) (2015).

[5] RCW 9A.72.120(1)(a).

[6] Celaya did not object to amending the information to add a count of fourth degree assault at the trial court level and does not assign error to the amendment on appeal.

In response, the State claimed that the "State is not in charge when the defendant commits new crimes." *Id.* at 11. The State explained that it did not add the charges earlier because the State "didn't know whether or not [it] could secure the cooperation of Mr. Pace, and that is an essential element to the Witness Tampering to know whether or not it was actually conveyed to Ms. Jeffries." *Id*. The State further explained that it was unable to contact Pace to confirm his cooperation until January 30, 2018.

The court granted the State's motion to amend the information and arraigned Celaya on the additional charges. After a short recess, Celaya moved for a continuance based on the court's grant of the amended information. The court granted Celaya's motion and entered an order continuing trial to February 27. The expiration of the time for trial period was reset to March 29, 2018.

Celaya moved for a continuance on February 27 because defense counsel was in trial and scheduled to be on vacation for two different time periods in March. The trial court continued the trial to March 19. The expiration of the time for trial period was reset to April 18, 2018.

On March 19, the court continued the trial to the following day because no courtrooms were available. Celaya objected to the continuance. At the hearing, defense counsel indicated that he intended to bring a CrR 8.3(b) motion because he believed the prosecutor mismanaged the case, but stated that it was "not procedurally appropriate" to discuss the merits at that time because counsel had not filed a declaration. VRP (Mar. 19, 2018) at 3.

No courtrooms were available on March 20. The trial was continued to the following day over Celaya's objection. At the hearing, Celaya's counsel clarified that he was not certain he would bring a CrR 8.3 motion. Counsel stated that he "would be looking at these issues" and

5

would only move to dismiss under CrR 8.3 by filing a declaration "if [he] felt it appropriate." 2 VRP (Mar. 20, 2018) at 14. Defense counsel never brought such motion.

No courtrooms were available on March 21, and the court again continued the case. Celaya moved to continue the trial to April 12 to accommodate defense counsel's vacation and judicial conferencing. The court granted the motion and set the trial date for April 12.

The State moved for a continuance on April 4 due to witness availability issues of four officers. Celaya did not object. The court granted the State's motion and continued the trial to April 17.

The case proceeded to trial on April 17. Jeffries and Pace testified for the State.

Jeffries testified to the details of the assault. The prosecutor asked Jeffries if there were any parts of the assault that she did not remember. Jeffries stated that as the prosecutor asked her questions, she recalled. She continued by stating, "I have had no reason to remember this event. I do not want to remember this event, so putting it out of my head has been all I've been doing. Forgetting is the goal." 2 VRP (Apr. 18, 2018) at 103. Jeffries testified that she did not remember what time she used drugs before the incident, what day of the week the incident occurred, or at what time she called the police. Jeffries also testified to other incidences where Celaya became violent towards her, but she could not remember the dates of the incidences. Pace stated that he could not remember whether Celaya and Jeffries argued on the day in question.

Celaya did not present any evidence. The jury found Celaya not guilty of second degree assault, but guilty of the lesser included offense of fourth degree assault. The jury also found Celaya guilty of fourth degree assault, felony harassment, violation of a no-contact order, and tampering with a witness. The jury entered special verdicts on all five counts and found for all five counts that the crimes were crimes of domestic violence. Celaya appeals.

DISCUSSION

I. CRR 8.3(b)

Celaya argues that his convictions should be dismissed because the State committed governmental misconduct under CrR 8.3(b) that caused the trial court to violate Celaya's constitutional right to a speedy trial. We disagree.

Celaya raises a violation of his constitutional right to a speedy trial in the context of CrR 8.3(b) by contending that his constitutional rights were violated *as a result of* government misconduct. CrR 8.3(b) permits the trial court to dismiss a criminal prosecution under certain circumstances:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

Celaya did not move to dismiss his charges under CrR 8.3(b) below. Although Celaya's counsel alluded to governmental misconduct under CrR 8.3(b) at the March 19 hearing, counsel stated that "it's not procedurally appropriate" to discuss the merits because counsel had not filed a declaration. VRP (Mar. 19, 2018) at 3. At a hearing the following day, Celaya's counsel clarified that he was not certain he would move to dismiss on the basis of CrR 8.3(b), but that he would be "looking at these issues" and would move to dismiss "if [he] felt it appropriate." 2 VRP (Mar. 20,

7

2018) at 14. Celaya's counsel took no further action and did not file a motion to dismiss under CrR 8.3(b).

Because Celaya abandoned the CrR 8.3(b) issue below, Celaya waived CrR 8.3(b) as a basis for review on appeal. Waiver is "'an intentional relinquishment or abandonment of a known right or privilege.'" *State v. Harris*, 154 Wn. App. 87, 95, 224 P.3d 830 (2010) (internal quotation marks omitted) (quoting *State v. Riley*, 19 Wn. App. 289, 294, 576 P.2d 1311 (1978)). Even when an error is a manifest constitutional error, "it can still be waived if the issue is deliberately not litigated" at the trial court level. *State v. Hayes*, 165 Wn. App. 507, 515, 265 P.3d 982 (2011); *see also State v. Walton*, 76 Wn. App. 364, 370, 884 P.2d 1348 (1994).

Celaya's counsel's statements to the trial court show that he clearly recognized the existence of the issue of governmental misconduct but nevertheless decided to not bring a CrR 8.3(b) motion. We conclude that by declining to move to dismiss his charges pursuant to CrR 8.3(b) in the trial court, Celaya has waived his claim of governmental misconduct on appeal. Thus, we decline to review Celaya's claim.

## II. CONSTITUTIONAL SPEEDY TRIAL RIGHT

Celaya next argues that his constitutional right to a speedy trial was violated, which he contends should be reviewed for the first time on appeal as a manifest constitutional error. We conclude that Celaya does not make the requisite showing under RAP 2.5(a)(3) and, therefore, decline to review his claim of error.

We generally will not consider issues raised for the first time on appeal. RAP 2.5(a); *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). An exception to this rule exists for manifest constitutional errors affecting a defendant's constitutional rights. RAP 2.5(a)(3); *O'Hara*, 167 Wn.2d at 98. To obtain review, an appellant must show that (1) the error is of constitutional magnitude and (2) the error is manifest. *State v. Lee*, 188 Wn.2d 473, 497, 396 P.3d 316 (2017).

Although Celaya raises a constitutional claim because the right to a speedy trial is guaranteed by the federal Sixth Amendment and article I, section 22 of the Washington Constitution, Celaya must also demonstrate that the alleged error is manifest. *State v. Ollivier*, 178 Wn.2d 813, 826, 312 P.3d 1 (2013). To do so, Celaya must show that the error "'had practical and identifiable consequences'" at his trial. *O'Hara*, 167 Wn.2d at 99 (internal quotation marks omitted) (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). Stated another way, Celaya must prove that he suffered prejudice at trial. *Lee*, 188 Wn.2d at 500.

Celaya argues that the delay in trial caused him prejudice because witness memories had faded. "As the time between the commission of the crime and trial lengthens, witnesses may become unavailable or their memories may fade." *Barker v. Wingo*, 407 U.S. 514, 521, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972). However, witnesses' fading memories may work to the defendant's advantage when the witnesses support the prosecution. *Id*. As the State carries the burden of proof, fading memories may weaken the prosecution's case; therefore, "deprivation of the right to speedy trial does not per se prejudice the accused's ability to defend himself." *Id.*

Celaya points to the fading memories of two State witnesses, Jeffries and Pace. Specifically, he points to Jeffries's testimony where she claims to not remember parts of the assault and Pace's testimony where he claims to not remember whether Celaya and Jeffries argued on the

day of the incident. However, as the only victim and the sole witness to the incident, Jeffries's forgetfulness could weaken only the State's case and benefit Celaya's defense. With regard to Pace's testimony, Celaya does not point to any practical or identifiable consequences that resulted from Pace's inability to remember whether Celaya and Jeffries were arguing on the day of the incident. Therefore, Celaya fails to show how Jeffries's and Pace's forgetfulness caused him prejudice that affected his right to a fair trial.

Because Celaya fails to show manifest constitutional error that affected his right to a fair trial, we decline to consider the alleged error.[7]

## II. STATEMENT OF ADDITIONAL GROUNDS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Celaya argues that he received ineffective assistance of counsel when (1) his counsel failed to investigate his background, (2) his counsel did not effectively cross-examine Jeffries, and (3) his counsel failed to enforce his speedy sentencing rights. We disagree and hold that the errors Celaya raises do not constitute ineffective assistance of counsel.

---

[7] Even assuming Celaya's alleged speedy trial violation was a manifest constitutional error and we considered the merits of his claim, Celaya's claim fails at the outset. When analyzing alleged violations of the constitutional right to a speedy trial, we use the balancing test set forth in *Barker*. *State v. Iniguez*, 167 Wn.2d 273, 283, 217 P.3d 768 (2009) (citing *Barker*, 407 U.S. at 530). However, in order to trigger the *Barker* analysis, the appellant must first show "that the length of delay crossed a line from ordinary to presumptively prejudicial." *Id*. Celaya does not satisfy the threshold burden of demonstrating that the delay was "presumptively prejudicial." *Id*. When the appellant fails to satisfy this threshold determination, "there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530. Thus, without a manifest constitutional error or a showing of presumptive prejudice, Celaya cannot raise nor prevail on a speedy trial violation issue raised for the first time on appeal.

The right to counsel includes the right to effective assistance of counsel. *State v. Crawford*, 159 Wn.2d 86, 97, 147 P.3d 1288 (2006). To show ineffective assistance of counsel, a defendant must show (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004); *see also Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). We do not address both prongs of the test when the defendant's showing on one prong is insufficient. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

To show deficient performance, Celaya must show that defense counsel's performance fell "'below an objective standard of reasonableness.'" *Id.* (quoting *Strickland*, 466 U.S. 688). Performance is not deficient when "'counsel's conduct can be characterized as legitimate trial strategy or tactics.'" *Id.* (quoting *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009)).

1. FAILURE TO INVESTIGATE

Celaya argues that he received ineffective assistance because his counsel did not thoroughly investigate his background. Celaya contends that any investigative measures would have been "beneficial for [his] defense of the charges." SAG at 10.

Defense counsel has a duty to conduct a reasonable investigation. *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 252, 172 P.3d 335 (2007). A defendant seeking relief under a failure to investigate theory "must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel." *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004).

Celaya does not identify what information would have been beneficial to his defense, and the record on appeal is scarce of any information regarding Celaya's background. Without more information, we are not in a position to analyze this claim. As this matter is beyond the record, we do not address it on appeal. *State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018). If additional evidence exists supporting this claim, then Celaya may produce that evidence in a personal restraint petition. *Id.*

2. TRIAL STRATEGY

Celaya argued that his counsel was deficient by withholding damaging impeachment evidence when his counsel cross-examined Jeffries. Celaya refers to messages Jeffries sent to an individual named Guam Steve. Celaya argues that his counsel's decision to not raise this evidence caused him prejudice.

Jeffries and Steve were in a brief romantic relationship while Celaya was in custody awaiting trial. The messages contained a series of alleged threats towards Jeffries. The messages also contained a message from Jeffries where she threatens to shoot Steve and then lie to the police about it. The messages were unrelated to Celaya's case.

The State moved to exclude messages between Jeffries and Steve. Defense counsel argued that the messages should be admitted at trial as impeachment evidence because the messages demonstrated bias. The court ruled that unless the messages became relevant from the rebuttal testimony, they were too attenuated. Defense counsel did not question Jeffries about the messages.

There is a strong presumption of effective assistance of counsel, and Celaya bears the burden of demonstrating the absence of a legitimate strategic or tactical reason for the challenged conduct. *Grier*, 171 Wn.2d at 33. Here, defense counsel's reasoning for not attempting to impeach Jeffries with the messages is not contained in the record on appeal. A reviewing court will not consider matters outside the record on direct appeal. *Linville*, 191 Wn.2d at 525. Moreover, the messages had no relevance to Celaya's case and it was unlikely that the court would have permitted the admission of the messages to impeach Jeffries due to its limited ruling. Thus, Celaya has failed to show that his counsel lacked a legitimate tactical reason for not using the messages to impeach Jeffries.

Accordingly, we reject his claim.

3.     SPEEDY SENTENCING RIGHTS

Celaya argues that he received ineffective assistance of counsel when his counsel failed to enforce his speedy sentencing rights. We disagree. The jury found Celaya guilty on April 26, 2018, and the court sentenced Celaya on June 19, 2018.

The constitutional right to a speedy trial encompasses a right to speedy sentencing. *State v. Ellis*, 76 Wn. App. 391, 394, 884 P.2d 1360 (1994). RCW 9.94A.500 embodies this right and establishes a specific time period for sentencing. Under RCW 9.94A.500(1), a sentencing hearing must occur within 40 court days after the conviction unless a party or the court moves for an extension for good cause.

Celaya points to the delay of 54 calendar days between his conviction and sentencing.[8] However, RCW 9.94A.500(1) mandates a sentencing hearing to occur within 40 *court* days of the conviction. Here, only 37 court days elapsed between Celaya's conviction and the sentencing hearing. Because the court sentenced Celaya within the time period set forth under RCW 9.94A.500, we find no violation of his speedy sentencing rights. Therefore, we hold that Celaya's counsel was not deficient because his speedy sentencing rights were not violated.

B. CUMULATIVE ERROR DOCTRINE

Celaya appears to argue that his counsel's ineffective assistance coupled with the violation of his right to a speedy trial constituted cumulative error that requires reversal.[9] We disagree.

Cumulative error may warrant reversal when several errors occurred at the trial court level to deny the defendant's right to a fair trial, even though each error standing alone would be considered harmless. *State v. Clark*, 187 Wn.2d 641, 655, 389 P.3d 462 (2017). Without error, the cumulative error doctrine does not apply. *Id*.

Because, as we hold above, Celaya was not deprived of effective assistance of counsel and he fails to demonstrate that review of his speedy trial claim is warranted under RAP 2.5(a), Celaya fails to establish any error. Without error, there can be no cumulative error.

---

[8] Celaya also refers to RCW 9.94A.110, however RCW 9.94A.110 was recodified as RCW 9.94A.500 by *Laws of 2001*, ch. 10, § 6.

[9] It is not clear whether Celaya includes his claim of an alleged speedy trial violation as part of his ineffective assistance of counsel claim or whether it is a freestanding claim that, when combined with his ineffective assistance of counsel claim, constitutes cumulative error. Because we find no error and thus find no cumulative error, it is unnecessary for us to resolve this confusion.

No. 52063-0-II

CONCLUSION

We hold that Celaya waived his CrR 8.3(b) claim, and therefore, we decline to review this issue for the first time on appeal. We also decline to review Celaya's claim that his constitutional right to a speedy trial was violated because he has not demonstrated this is a manifest error affecting a constitutional right under RAP 2.5(a)(3). We further hold that the issues Celaya raises in his SAG do not warrant reversal. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, A.C.J.

15